No. 85-639

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

STATE OF WASHINGTON, ex rel.,
JEANNE A. BLAKESLEE,

        Petitioner/Appellant,

   vs.

RONALD ALSON HORTON, SR.,

        Respondent.

_____

APPEAL FROM:  District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:
        Harold Hanser, Yellowstone County Attorney,
        Billings, Montana,
        Terence M. Swift, Deputy County Attorney,
        Billings, Montana,

    For Respondent:

        Stephens Law Firm; Robert L. Stephens, Jr.,
        Billings, Montana.

_____

             Submitted on Briefs: April 30, 1986

                  Decided:  July 24, 1986

Filed:   JUL 24 1986

_____
                 Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by the petitioner from an order of the Yellowstone County District Court, the Honorable Charles Luedke presiding, denying enforcement of a petition for child support made under the Uniform Reciprocal Enforcement of Support Act ("URESA"). We affirm.

On December 18, 1984, the petitiner/appellant, Jeanne Blakeslee ("mother"), filed a petition for support under URESA in the County Attorney's office in Clark County, Washington. The mother was at that time a resident of Clark County, Washington. The petition requested that respondent, Ronald Horton ("father"), be ordered to pay current child support in the amount of $50 per month and that an order be entered granting the mother a judgment in the sum of $8,850 for support arrearages owed to her as of December 18, 1984. The mother and father had been granted a divorce decree in March of 1970 in Yellowstone County which ordered the father to pay support in the amount of $50 per month to the mother for the support of their minor child. The record is undisputed that the father has never made any support payments to the mother as specified in the divorce decree.

The mother's URESA petition was forwarded to the Yellowstone County Attorney's Office in January of 1985 for enforcement. The District Court thereafter issued an order to show cause to the father asking him to come before the court and explain why he should not be required to pay the child support the mother had requested in her petition. A hearing on the matter was held, without a court reporter present, and on November 27, 1985, Judge Luedke issued his memorandum and order. In the order Judge Luedke determined

that the husband did not owe any current or past due child support as requested by the mother in her petition. From this ruling the mother has appealed.

The mother now presents the following issue for review by this Court: Whether the order of the District Court which excuses the father from paying the child support ordered in the divorce decree is an abuse of the court's discretion and endangers the welfare of the minor child of the parties by denying the child its right of support?

It should also be noted that the father in his brief suggests that Judge Luedke's above mentioned order may not be a "final" judgment or order in this matter thereby making it non-appealable under Rule 1(a), M.R.App.Civ.P. We disagree. After reviewing Judge Luedke's memorandum and order, it appears to this Court that Judge Luedke made a final determination of the mother's request for child support under her URESA petition. Such a determination by Judge Luedke constitutes an appealable order under Rule 1(a).

In her brief, the mother strongly argues that the District Court blatantly abused its discretion in refusing to order the father to support his minor child. The mother contends the court's decision totally ignores the welfare of the child and its right to support. Furthermore, the mother points out, the court's order is contradictory to existing Montana law.

On the surface, the mother's argument appears to have some merit, especially in light of the harsh result as ordered by the District Court. However, when the court's decision is considered in light of the circumstances surrounding this case, the result seems to come into perspective. In his order and memorandum Judge Luedke

recites in considerable detail the facts under which the mother pursued her URESA petition and the reasons why he believed her petition should be denied. We note we can find little, if any, fault with Judge Luedke's decision in this matter and we therefore adopt his well analyzed memorandum and order and offer the same as the basis for this opinion.

This is an action brought under URESA against a father to enforce child support due under a March 27th, 1970, divorce Decree providing for payments of $50.00 per month commencing April, 1970, payable through the office of the Clerk of District Court. As of the date of the petition, which was filed in December, 1984, a total arrearage of $8,850.00 had accrued, no payment whatever having been made at any time.

The father defends against enforcement through this proceeding by testifying that after the divorce, the mother took the position that if the father would stay out of her life and the child's life, they would stay out of his. The father has proceeded on this basis throughout the ensuing years. He has never made any application for modification of the Decree to eliminate the child support provision nor has he attempted to enforce the visitation privileges accorded him in the divorce Decree.

There is no evidence from or on behalf of the mother with respect to such alleged understanding, either denying or admitting it. However, the mother has never before sought payment. At one point, when asked to sign a satisfaction of child support to permit the father to purchase a home, she first agreed, according the father, and then later changed her mind and refused. However, she took no affirmative action otherwise. The mother is not receiving public assistance, but has made a non-assistance assignment pursuant to the laws of the State of Washington for the purposes of this action. All indications are that she is pursuing her petition on her own initiative, although she is utilizing the prosecuting attorneys in Washington and Montana for that purpose.

The father has never seen the child involved, nor known of its whereabouts or the whereabouts of the mother until this proceeding was instituted. Although child support payments were to be made through the Clerk of Court, no record thereof was ever set up, meaning that the father never made a payment and the mother

never made any inquiry of that office concerning any payment.

The totality of the circumstances appearing--and the evidence is admittedly scanty from the standpoint of the mother--indicates that the parties did arrive at a mutual arrangement where each stayed away from the other, and that this was a satisfactory status to both parties until something prompted the mother to take advantage of the legal fact that child support in a Decree is a judgment which is constantly accruing on a monthly basis and is not subject to retroactive change.

Consequently, she can turn the clock backwards on the understanding which was entered into and became consummated by mutual observance over the years, and create a financial windfall situation--one that can be pursued through County prosecuting offices by filling out and signing forms in a local office without any personal expense to her.

The father and the child, on the other hand, cannot turn the clock backwards to recapture the association which they should have had and could have had, except for the agreement which was made and has been followed.

The law is clear that the arrearage in child support payments cannot be modified by the Court upon any retroactive basis. [§ 40-4-208, MCA.]

The law is also clear that the child support and child visitation are separate incidence, neither being dependent nor conditioned upon the other. [§ 40-5-124, MCA; see, State Ex Rel. Dewyea v. Knapp (Mont. 1984), 674 P.2d 1104, 41 St.Rep. 143.]

These legal principles, however valid they may be as a general rule, are rendered impotent when the parties mutually agree that they be ignored and also carry out such agreement in actual fact for fourteen years, as has been done here.

The arrearage for child support may remain technically inviolable and the theoretical right to visitation may continue on the same basis, but the enforceability of each in this case cannot be automatically implemented without any recognition being given to the reality of the past acts and omissions chargeable to the parties. Equity cannot allow the mother to participate in nullification of the purpose of the law in fact and, at the same time, allow her to claim the benefit of it in theory, simply because there

5

> is a meter running which can total a dollar
> loss in child support, but nothing to total the
> loss of a father-son association. (Emphasis
> added.)

> The mother has been satisfied with silence for
> fourteen years and received what must have been
> construed by her to be a benefit for both
> herself and the child, i.e., a complete lack of
> contact with the father. There is no assertion
> made or even suggested by the mother that the
> present request is founded upon any actual need
> of the child which has existed, but has not
> been satisfied over the years, or which has now
> arisen and could serve to validate her action
> in pursuing payment at this belated point.

> If evidence exists which explains, from the
> standpoint of the mother and child, why the
> mother was content to consider the lack of any
> contact with the father as anything other than
> an acceptable trade-off against receipt of
> child support, it has not been made known to
> the Court. Upon the basis of the record now
> before the Court, a concern does arise as to
> whether the Court is being properly used, and
> for that reason the evidence before the Court
> does demonstrate that the respondent has shown
> ample cause why the Court should not order at
> this time and in this cause what has been
> requested by the petitioner.

> IT IS SO ORDERED.

We find Judge Luedke's memorandum and order speaks for itself. Although legally the mother may have been correct in her claim for child support, equity demands that her claim must fail. This Court has long adhered to such principles of equity. We have noted that there are circumstances where a litigant may be remediless ". . . unless equity could afford him relief." Link v. Haire (1928), 82 Mont. 406, 420, 267 P. 952, 956. Further, we have stated that "[w]hen a District Court sits as a court of equity, it is empowered to determine the questions involved in the case and to do complete justice." Sawyer-Adecor International, Inc. v. Anglin (1982), 198 Mont. 440, 455, 646 P.2d 1194, 1202. See also, Rase v. Castle Mountain Ranch, Inc. (Mont. 1981), 631 P.2d 680, 38 St.Rep. 992.

6

In conclusion, we note that the instant case <u>does</u> <u>not</u> reverse or modify our previous case law which holds that each installment under an order for periodic child support is final and non-modifiable when it falls due.  We only hold that Judge Luedke's memorandum and order constitutes a sound exercise of the District Court's discretion and also is a correct application of accepted principles of equity in this state.

The order of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

7